# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3121

_____

United States of America,

       Plaintiff-Appellee,

  v.

Jose O. Martinez, also known as
Daniel Alejo, also known as Pedro C.
Alejo

       Defendant-Appellant.

Appeal from the United States
District Court for the District of
Nebraska.

_____

Submitted: December 18, 1998
Filed: January 22, 1999

_____

Before MURPHY, JOHN R. GIBSON, and MAGILL, Circuit Judges.

_____

MURPHY, Circuit Judge.

After Pedro Alejo[1] was stopped for moving violations, sixteen pounds of methamphetamine were found in the car he was driving. He was charged with one

_____

[1]This appears to be appellant's legal name as opposed to the other names listed in the caption. Daniel Alejo was the name on the driver's license appellant produced, and the name Jose O. Martinez came up in a criminal history check performed at the scene of the traffic stop.

count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), convicted after a jury trial, and sentenced to serve 168 months. On appeal Alejo argues that the district court[2] erred in denying his motion to suppress evidence, his Batson challenge, his motion for acquittal, and his request for a minor role sentencing reduction. We affirm.

Alejo was stopped on an interstate highway in Nebraska on May 17, 1997, after state trooper Gerald Schenck observed his vehicle follow another too closely and pass unsafely. Schenck initiated the stop by turning on the overhead lights of his squad car, causing a video camera within his car to begin recording; a wireless microphone was also clipped on the trooper's lapel. After Alejo pulled over, Schenck approached the driver's door and requested license and registration information. Schenck spoke to Alejo in English. Alejo produced an Indiana driver's license bearing the name Daniel Alejo and an incomplete bill of sale for the car which showed Daniel Alejo as the buyer. Alejo explained that he had originated his trip by flying from Indiana to California where he had purchased the car for $2000 and that he was on his way back to Indiana. Trooper Schenck indicated that he planned to issue Alejo two warning citations and returned to his vehicle to complete them. He also ran a criminal history check on Daniel Alejo, the named person on the driver's license presented to him. The information he received indicated that Daniel Alejo had a prior conviction for transporting illegal aliens and that he had also used the name Jose O. Martinez.

The trooper went back to appellant's car, returned the license, and asked more questions about the vehicle purchase. Alejo responded that he had purchased the car from a friend. Schenck found this inconsistent with Alejo's previous comments and proceeded to ask several more questions about the seller of the vehicle. Alejo finally said he didn't know the name of the person who sold him the car.

---

[2]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

Schenck then asked Alejo for permission to search the car. Alejo said "OK." Schenck asked if Alejo could read either Spanish or English, and Alejo responded that he could only read Spanish. Schenck then returned to his vehicle for a consent form written in Spanish. Schenck told Alejo to make sure he understood the form, but he did not advise him that he could refuse to sign it and did not read it out loud to him. Alejo signed the consent form without further conversation.

Schenck asked Alejo to step out of the vehicle, and he began to inspect it. After a brief search of the interior, he went back to his squad car to get Nero, the service dog riding with him. The dog alerted near the trunk of Alejo's car. When Schenck opened the trunk, he noticed it was very clean except for a few metal shavings under the carpet. He went on to discover a metal plate and wires running behind the back seat, and two nylon gym bags tucked into a compartment built between the trunk wall and the back seat. The bags contained what was later determined to be approximately sixteen pounds of methamphetamine. Alejo was taken into custody and interviewed in English. He admitted that his real name was Pedro Alejo, that Daniel Alejo was his brother, and that he had used a driver's license in his brother's name because his own had been suspended.

## I.

Alejo appeals his conviction and his sentence, and seeks a new trial or resentencing. He claims the search violated the Fourth Amendment and that it was clear error for the court to find he had consented to it, that his constitutional rights were also violated when the prosecutor struck the only person of color from the jury venire panel, that there was not sufficient evidence to support a finding that he knowingly possessed the methamphetamine, and that he should have received a minor role reduction under U.S. Sentencing Guidelines Manual § 3B1.2 [U.S.S.G.].

## A.

The district court adopted the finding of the magistrate judge[3] that Alejo had voluntarily consented to the search. Alejo asserts the court erred in denying his motion to suppress the evidence seized from his car. He argues it was error for the court to find he consented to the search because he did not understand English or read Spanish well enough to give his voluntary and intelligent consent. The magistrate found that Alejo was able to read the consent form, albeit slowly, and had lived and worked in Indiana for twenty years. He found that Alejo understood English enough to converse with the trooper and to give his knowing consent. Although Schenck was "less than accommodating," the magistrate found that Alejo had not been coerced or his will overborne. A decision not to suppress evidence will be upheld unless it rests upon clearly erroneous findings of fact or reflects an erroneous view of the applicable law. United States v. Berry, 113 F.3d 212, 122 (8th Cir. 1997).

A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion, United States v. Cortez, 935 F.2d 135, 142 (8th Cir. 1991). A traffic violation alone will not justify an automobile search; there must be probable cause or consent. Knowles v. Iowa, 119 S. Ct. 484 (1998). In order to determine if consent is voluntary a court should look at all the circumstances, including the nature of the interchange, the characteristics of the individual stopped, and the coerciveness of the environment. United States v. Chaidez, 906 F.2d 377, 380-81 (8th Cir. 1990). Voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." Id. An officer is not required to warn a driver that he does not have to sign a consent form. United States v. Ramos, 42 F.3d 1160, 1164 (8th Cir. 1994).

A careful review of the videotape of the stop in this case shows that the findings below were not clearly erroneous. Alejo verbally agreed to let Schenck search his car,

---

[3]The Honorable David L. Piester, United States Magistrate Judge

and he signed a Spanish language consent form after indicating that he could read Spanish. Schenck spoke to Alejo in a normal tone of voice and did not display a weapon or remove Alejo from his car. Alejo did not appear intoxicated or lacking in intelligence. It is also relevant that Alejo had some prior experience with the legal system involving the suspension of his driving privileges.

Alejo argues that the trooper did not have reasonable suspicion to continue to detain him after completing the citations and returning his license. Alejo's nervousness and apparent inconsistent answers to Schenck's questions, certain details appearing on the bill of sale Alejo had presented, and the information obtained from the license check gave rise to reasonable suspicion sufficient to permit further questioning. See United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994); see also United States v. McManus, 70 F.3d 990, 993 (8th Cir. 1995). The request to search was not itself a violation of the Fourth Amendment. See United States v. White, 81 F.3d 775, 778-79 (8th Cir. 1996). The district court did not err in denying the motion to suppress evidence.

B.

Alejo contends that his constitutional rights were also violated by the government's use of a peremptory strike to remove the only person of color from the jury panel. See Batson v. Kentucky, 476 U.S. 79, 89 (1986). Alejo argues that the reasons offered by the prosecutor for the strike were pretextual and that the prosecutor knew that the juror was a Native American at the time he made the strike.[4]

Batson challenges are analyzed in three steps. A party opposed to the government's use of a peremptory strike must make out a prima facie case of

---

[4]The parties disagree about when the prosecutor learned that the juror was a Native American, but for purposes of our analysis we adopt Alejo's position.

discrimination. Then the burden shifts to the government to produce a race-neutral explanation. Purkett v. Elem, 514 U.S. 765, 767 (1995). If a race-neutral explanation is tendered, the court must then determine whether purposeful racial discrimination has been proven. This may include analyzing whether the reasons offered are pretextual. Id. The court's ultimate finding of whether there was discrimination is reviewed for clear error. United States v. Carr, 67 F.3d 171, 175 (8th Cir. 1995).

When Alejo raised his Batson challenge, the court asked the government to explain the basis of its challenge. The court accepted as race-neutral the prosecutor's explanation that the juror had been struck because of her marital status and age and because her body position and eye contact during voir dire suggested an attitude unfavorable to the government. The court concluded that the government's actions were not discriminatory, and there was no evidence that similarly situated white jurors were not stricken. The district court was "in the best position to evaluate the truthfulness of [the] asserted explanation," United States v. Jenkins, 52 F.3d 743, 746 (8th Cir. 1995), and Alejo has not shown the court erred in rejecting his challenge.

C.

Alejo also objects to the denial of his motion for judgment of acquittal, because of insufficient evidence that he knowingly possessed the methamphetamine. The government responds that it produced sufficient evidence to support the finding that Alejo was aware of the drugs in the car. A denial of a motion for judgment of acquittal should be reversed "only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of the essential elements of the crime charged." United States v. Mundt, 846 F.2d 1157, 1158 (8th Cir. 1988). "While reasonable inferences from the evidence weigh against the defendant, speculation does not." United States v. Pace, 922 F.2d 451, 453 (8th Cir. 1990).

The element of knowing possession is normally established through circumstantial evidence because of the difficulty in obtaining direct evidence of an individual's knowledge. See United States v. Ojeda, 23 F.3d 1473, 1476 (8th Cir. 1994). Here there was evidence of Alejo's ownership, dominion, and control over the vehicle in which the drugs were found. See United States v. Schubel, 912 F.2d 952, 955 (8th Cir. 1990). There was also testimony indicating that Alejo appeared nervous and that there were metal shavings in the trunk and wires and burn marks behind the back seat. The jury could have found that Alejo's apparent nervousness and his inconsistent answers were related to his knowledge that there were drugs in the vehicle. The jury could also have found it unlikely that someone would fly from Indiana to California to purchase a $2000 car. Although other inferences could have been drawn from the evidence, we cannot say that no reasonable jury would have found Alejo knew that the methamphetamine was in the vehicle. The district court did not err in denying the motion for judgment of acquittal.

D.

Finally, Alejo asserts it was error for the court to deny him a sentencing reduction under U.S.S.G. § 3B1.2. A defendant who establishes that he was a "minor participant" in the offense can be granted a two-level reduction. Id. A district court's findings regarding the role played by a defendant in the offense are reviewed for clear error. United States v. Snoody, 139 F.3d 1224, 1227 (8th Cir. 1998); United States v. Chatman, 119 F.3d 1335, 1341 (8th Cir. 1997). A role as a courier or mule in a drug distribution scheme does not necessarily entitle the individual to a § 3B1.2 reduction, Snoody 138 F.3d at 1228. Transportation is a necessary part of illegal drug distribution, and the facts of the case are critical in considering a reduction for minor role. See United States v. McGrady, 97 F.3d 1042, 1043 (8th Cir. 1996). Given the facts regarding Alejo's demeanor and statements, the appearance of the inside of the trunk, the manner in which the drugs were secreted in the car, and the large amount found, it was not error to deny Alejo a minor role adjustment.

III.

For the reasons discussed, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.