# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1631

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Don Juan Maxwell, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 26, 2006
Filed: January 12, 2007

_____

Before WOLLMAN, BRIGHT, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

A jury found Don Juan Maxwell guilty of two counts of possession with intent to distribute a controlled substance. On appeal, Maxwell argues that the District Court[1] erred in rejecting his Batson[2] challenge, which alleged that the government used its peremptory strikes in a racially discriminatory manner to remove three of the five African-American veniremembers. We affirm.

_____

[1] The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

[2] Batson v. Kentucky, 476 U.S. 79 (1986).

There were five African-Americans on a panel of thirty-one persons from which the jury was to be selected for Maxwell's trial. After voir dire, the government used three of its seven peremptory challenges to strike three of the four African-American males from the venire. The defense used a peremptory challenge to strike the only African-American female from the venire. The one remaining African-American male was seated on the jury. The defense made a timely <u>Batson</u> objection, arguing that the government's use of its peremptory strikes to remove African-Americans from the venire was racially motivated and therefore violated Maxwell's constitutional rights. The District Court found that Maxwell had presented a prima facie case of racial discrimination. In response, the government articulated its race-neutral reasons for striking the three African-American venire members.

The government explained that it struck Juror 29 because one of his immediate family members was facing drug charges and because he expressed an opinion the government interpreted as favoring the legalization of certain drugs. The defense countered that Juror 21 was a similarly situated white woman whom the government did not strike from the venire. The government responded by noting that Juror 21 was not similarly situated because this juror's family member, her father, had been convicted of murder, not possession with intent to distribute a controlled substance. Moreover, the government stated that it did not strike Juror 21 because it believed that the juror's statement during voir dire that she did not "think [her father] got treated hard enough" because "[h]e murdered somebody and he got only four years," was favorable to its position. Trial Tr. at 26.

The government stated that it struck Juror 26 because the government observed him "chuckling and smirking" during questioning regarding the credibility of police testimony—behavior that the government viewed as antagonistic to its position. <u>Id.</u> at 68. In addition, the government believed that Juror 26 lacked strong ties to the community because the juror had lived in his current residence only two months and had been employed at his current job for only one year. The defense responded that

it had not observed the juror's alleged antagonistic behavior and that the District Court had not afforded the defense an opportunity to inquire into the juror's reaction. Although neither the District Court nor the defense observed Juror 26's "smirking and chuckling," the court credited the government's observations, stating that it would not "dispute" them. Id. at 74–75.

Finally, the government explained that it struck Juror 25 because he was employed as a teacher and because the government believed that he lacked strong ties to the community, as he had lived in his residence only four months. The District Court remarked that Juror 5 and Juror 12 had each resided in his respective home "for a short period of time" and neither juror was struck by the government. Id. at 69. The government responded that Juror 5 and Juror 12 had each been living in his respective home for roughly two years, unlike Juror 25, who had lived in his home for only four months. The government further argued that neither Juror 5 nor Juror 12 was a teacher, making these jurors dissimilar to Juror 25. In addition, the government noted that it struck Juror 11, a college professor who was not African-American, and Juror 16, a teacher who was not African-American and who had been living in her residence for less than a year.

After hearing the government's explanations, the District Court expressed skepticism regarding the government's reasons for striking Juror 26 and Juror 25:

> I think these are very, very, very inadequate reasons for striking two African-American males when the defendant is an African-American male and when we only have one African-American who's also a male on the jury. . . . I am very, very concerned about counsel having rather lame excuses in my judgment for those two peremptory strikes . . . .

Id. at 75. Nevertheless, the District Court credited the government's race-neutral explanations and denied Maxwell's Batson challenge, noting specifically that it would

"honor [government] counsel's integrity" with respect to the observations of Juror 26's negative demeanor. Id.

On appeal, Maxwell argues that the District Court clearly erred in finding that the government's explanations for striking the three African-American veniremembers were race-neutral and in concluding that the government did not engage in purposeful race discrimination. The government responds that the District Court properly rejected Maxwell's Batson challenge.

In Batson, the Supreme Court described a three-part analysis for determining whether a party impermissibly struck a potential juror on account of the juror's race. 476 U.S. at 96–98. First, the party objecting to the strike must make a prima facie showing that the strike was racially motivated. Id. at 96–97. The burden then shifts to the striking party to present a race-neutral explanation for the strike. Id. at 97–98. Once the striking party offers a race-neutral explanation for the strike, the objecting party may come forward with a reason or reasons why the proffered explanation is really a pretext for discrimination. United States v. Scott, 26 F.3d 1458, 1467 (8th Cir.) (noting that an objecting party bears the burden of establishing pretext once a race-neutral explanation has been offered), cert. denied, 513 U.S. 1019 (1994). Finally, the district court must determine whether the party objecting to the strike has carried the burden of proving that the strikes were motivated by purposeful race discrimination. Batson, 476 U.S. at 98; see Purkett v. Elem, 514 U.S. 765, 767 (1995) (per curiam). The Supreme Court has recognized that the findings underlying a district court's Batson analysis depend largely on credibility evaluations and has directed reviewing courts to "give those findings great deference." 476 U.S. at 98 n.21. Therefore, we review the District Court's Batson ruling for clear error, United States v. Pherigo, 327 F.3d 690, 695 (8th Cir.), cert. denied, 540 U.S. 960 (2003), according great deference to the court's findings, United States v. Roebke, 333 F.3d 911, 912 (8th Cir. 2003), and keeping in mind that "the ultimate burden of persuasion

-4-

regarding racial motivation rests with, and never shifts from" the party opposing the strike, Purkett, 514 U.S. at 768.

Here, the government used three of its seven peremptory strikes to remove three of the five African-American veniremembers. Maxwell objected to these strikes, and the government came forward with race-neutral explanations for each strike. The government explained that it struck Juror 29 because he appeared to favor the legalization of drugs and because one of his immediate relatives was facing state drug charges. Maxwell was charged with several drug-related offenses, and therefore the government's explanation for the strike was appropriate and nondiscriminatory. United States v. McKay, 431 F.3d 1085, 1092 (8th Cir. 2005) (concluding that striking a juror in a drug conspiracy case because the juror's family members had been convicted of drug offenses was an appropriate, race-neutral reason for strike), cert. denied, 127 S. Ct. 46 (2006). In response to the government's explanation, Maxwell argued that Juror 21 was similarly situated to Juror 29, but was not struck by the government. Juror 21, however, was not similarly situated because she had a close family member who was convicted of murder, not a drug offense. And Juror 21's comments that she believed her father was not punished harshly enough for his crime reflected no potential bias in Maxwell's favor, whereas Juror 29's comments about the legalization of drugs tended to favor Maxwell. Because Maxwell failed to establish that the government's proffered reasons for the strike were a pretext for race discrimination, the District Court did not err in rejecting Maxwell's Batson challenge with respect to Juror 29.

The government explained that it struck Juror 26 because the juror lacked strong ties to the community, and because the juror's body language suggested to the government that he held significant doubts about the credibility of police officers' testimony. The absence of community attachment is a legitimate, race-neutral reason for striking a juror. See United States v. Atkins, 25 F.3d 1401, 1406 (8th Cir.) (recognizing that party may strike a veniremember who "lacks an attachment or

commitment to the community"), cert. denied, 513 U.S. 953 (1994); United States v. Day, 949 F.2d 973, 979 (8th Cir. 1991) (same), cert. denied, 511 U.S. 1130 (1994). Additionally, a juror's demeanor and body language may serve as legitimate, race-neutral reasons to strike a potential juror. United States v. Davidson, 449 F.3d 849, 852–53 (8th Cir.) ("Body language and demeanor can be appropriate reasons to strike jurors."), cert. denied, 127 S. Ct. 609 (2006); United States v. Martinez, 168 F.3d 1043, 1047 (8th Cir. 1999) (affirming where district court concluded that a veniremember's negative body language was a permissible, race-neutral reason for government's peremptory strike). Although neither the District Court nor Maxwell's attorney directly witnessed Juror 26's behavior, the court expressly credited the government's observation and was in the best position to evaluate the government's credibility. See United States v. Hill, 249 F.3d 707, 714 (8th Cir. 2001); United States v. Darden, 70 F.3d 1507, 1531 (8th Cir. 1995), cert. denied, 517 U.S. 1149 (1996). Maxwell argues that the District Court did not afford him an opportunity to develop the record regarding Juror 26's behavior. A review of the record belies this assertion. The defense challenged the government's body-language explanation, and the District Court considered and rejected the argument. The District Court's findings on this issue are entitled to "great deference," and we see no reason to disturb them. See Pherigo, 327 F.3d at 696. Because Maxwell failed to counter the government's race-neutral explanations with persuasive evidence of pretext, the District Court committed no clear error in rejecting Maxwell's Batson challenge with respect to Juror 26.

The government explained that it struck Juror 25 because he was employed as a teacher, which the government believed might make the juror biased in favor of Maxwell. The inference that a juror's employment might make the juror more sympathetic to a criminal defendant is a valid, race-neutral reason for striking a juror. See, e.g., id. at 696 (concluding that employment in the drug industry is a race-neutral ground for striking a potential juror in a drug case). Moreover, the government applied this rationale consistently and without regard to race, striking two other veniremembers who were employed as teachers and were not African-American. See

Atkins, 25 F.3d at 1406 (stating that government's consistent use of government employment as a reason for peremptory strikes supported race-neutral motivation for strikes).  In addition to concerns about Juror 26's employment, the government explained that the juror's lack of community ties motivated the strike.  As discussed above, the absence of community attachment is a valid, race-neutral reason for striking a juror.  Consequently, we conclude that Maxwell has failed to carry his burden of demonstrating pretext with respect to Juror 25.[3]

The reasons articulated by the government for striking the three African-American veniremembers were race neutral and appropriate.  The District Court did not clearly err in rejecting Maxwell's Batson challenge because Maxwell failed to establish that the government engaged in purposeful race discrimination in its use of peremptory strikes.  Accordingly, we affirm the judgment of the District Court.

BRIGHT, concurring in the result.

I concur in the result.

---

[3]In ruling on the Batson challenge, the District Court erroneously attributed the government's negative-body-language explanation for striking Juror 26 to the government's separate reasons for striking Juror 25.  The issue apparently arose when, during the defense's argument that the government's explanations were pretextual, the defense confused the government's various race-neutral reasons for striking the two jurors.  See Trial Transcript at 71 ("The government did not seek to inquire of jurors 25 or 26 as to whether or not, and I must admit I did not observe the smile or the smirk on behalf of either jurors 25 or 26.").  Because the record shows that the District Court properly considered the actual reasons given by the government for striking Juror 25—employment and lack of community ties—and determined that those reasons were race neutral and not pretextual, we cannot say in these circumstances that the District Court's conclusion was clearly erroneous.  See, e.g., Pherigo, 327 F.3d at 695 (standard of review).

I agree with the district court that defendant's objection to the striking of African-American veniremen by the prosecution made out a prima facie case of discrimination against African-Americans in selecting the jury.

Moreover, in my examination of the record, I view the explanations provided by the prosecutor for striking the jurors in question as weak.

The district judge noted regarding jurors 25 and 26, "I think these are very, very, very inadequate reasons for striking . . . ." The trial judge, who is an able, experienced, and fair-minded jurist, accepted the prosecutor's views, although with some misgivings. It is proper, I agree, to defer to the trial judge's exercise of discretion to permit the strikes here in question to stand. I add, however, my view that a contrary determination by the district judge would have been free of error.

Appellate judges must rely on trial judges to be vigilant doorkeepers in seeing that prosecutors do not slam the door on African-Americans called to serve on a jury by using pretext to mask race discrimination. The litany of approved strikes recited in this and other cases should not stand where the reason or reasons given are pretextual.

_____