# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-2455

_____

United States of America

*Plaintiff - Appellee*

v.

Michael Patrick Carr

*Defendant - Appellant*

_____

No. 17-2548

_____

United States of America

*Plaintiff - Appellee*

v.

Jonathan Leroy Homedew

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 12, 2018
Filed: July 20, 2018

———————

Before SMITH, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.

———————

SMITH, Chief Judge.

This is a consolidated appeal of two drug coconspirators' cases. Jonathan Leroy Homedew was convicted of conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(a), and 846. He appeals the district court's[1] denial of his motion to suppress and alleges that his trial counsel's ineffective assistance led to the denial of his motions to dismiss the indictment for violation of his speedy trial rights. Michael Patrick Carr was convicted of possession of methamphetamine, in violation 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). He appeals the substantive reasonableness of his prison sentence. We affirm.

## I. *Background*

On September 7, 2016, United States Postal Inspector Kevin Marshall identified a suspicious package while conducting a routine examination of parcels at the United States Postal Service's facility in south Des Moines, Iowa. After a drug-sniffing dog alerted to the presence of a controlled substance, Marshall obtained a

———————

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

search warrant to open the package.[2] He found that the parcel contained approximately one kilogram of methamphetamine.

Law enforcement conducted a controlled delivery of the package to its intended address. Shortly after the package was delivered, Carr arrived in a vehicle registered to Homedew. Carr retrieved the package and drove off. The authorities arrested Carr shortly thereafter. He chose to cooperate with police. Carr disclosed that he had a business relationship with "Jon." Carr stated that he anticipated receiving another approximately 27 pounds of methamphetamine from Jon that had already been shipped. Carr also told police that Jon was flying into town the next evening. Using text messages Carr showed them, Jon's cell phone number, and a social media search, law enforcement concluded that Jon was Jonathan Homedew.

On September 8, about ten law enforcement officers positioned themselves around the Des Moines airport in anticipation of Homedew's arrival. They spotted him leaving the airport with a backpack. Police arrested Homedew and took possession of his backpack. The backpack was not immediately searched. Officers escorted Homedew to a police vehicle, and when asked, Homedew disclosed that he had checked one bag. Officer Ben Carter asked Homedew for permission to look in the backpack to retrieve the baggage claim receipt. Homedew told him to "go ahead," and said the receipt would be in the top pouch. *United States v. Jonathan Leroy Homedew*, No. 4:16-cr-0145-JAJ-HCA-1, slip op. at 3 (S.D. Iowa Dec. 22, 2016), ECF No. 130. While looking for the baggage receipt, Carter noticed three postal receipts commingled with other papers in the pouch. Given what he knew about the

_____

[2]The search warrant application, which the district court's order on the motion to suppress references, lists a number of factors in support of Marshall's belief that the package was suspicious. For example, it was an Express Mail package that weighed about one pound, when most parcels sent express are less than half that weight; the label was handwritten; and the sender, recipient, and return address appeared to be fictitious.

case to that point, he surmised that the postal receipts could contain incriminating information and seized them as well. Carter then began opening another zipper, prompting Homedew to withdraw his consent to look in the bag. Carter stopped the search. Upon Homedew's and the officers' arrival at the police station, Carter made copies of the receipts and went online to track their progress. He also provided copies to Marshall, the postal inspector.

After being transported to the police station, Homedew consented in writing to a police interview. He was *Mirandized* and told that he was not obligated to participate in or continue the interview. Homedew expressed his belief that the search of his backpack at the airport had exceeded the scope of his consent. Nonetheless, he eventually consented to the search of his backpack and checked bag. Notes found in his checked luggage corroborated information Carr gave police about the drug operation.

Using the postal receipts, Marshall retrieved eight more packages containing methamphetamine—seven at the Des Moines postal station, and one at the post office in Winterset, Iowa.

On September 21, 2016, the government indicted Homedew and Carr, as well as Sonya Rae Tucker and Amber Marie Shipp, with conspiracy to distribute over 50 grams of actual methamphetamine and 500 grams of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Carr, Tucker, and Shipp were also charged with a single count of possession with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

On November 7, 2016, Homedew's appointed counsel moved to suppress evidence obtained from the search of his backpack and seizure of the postal receipts,

including the fruits of the search of his checked baggage and other items, arguing that the search and seizure violated his Fourth Amendment rights.

The court consolidated the defendants' trial schedules and set trial for all four defendants for November 28, 2016. On November 1, Shipp's counsel moved to continue the trial for three months, alleging that Shipp needed time to work out her plea deal and that her codefendants had no objection. The court granted the motion following a hearing and reset trial for February 13, 2017. The court, citing the ends of justice, excluded the time between the filing of the motion and the new trial date from consideration under the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(1)(7)(A).

On December 16, upon discovering the continuance, Homedew filed a pro se motion claiming that his attorney had ignored his clear request to file an objection to any continuance of his trial. Homedew asserted a violation of his right to a speedy trial. He also requested that the court appoint him new counsel. He subsequently filed a pro se motion to sever and a pro se motion to dismiss. The gravamen of both motions was that delays in the case violated his right to a speedy trial under both the Speedy Trial Act and the Sixth Amendment. The court appointed substitute counsel, who also filed a motion to dismiss the indictment for violations of Homedew's right to a speedy trial. The pro se and counsel-filed motions to dismiss alleged that Homedew's previous counsel had failed him by consenting to a continuance against his wishes.

The district court denied Homedew's motion to suppress. First, it found that Homedew had voluntarily consented to the search of his backpack. Second, the court found that the search was properly undertaken incident to Homedew's arrest. Third, the court found that the plain view doctrine justified the seizure of the postal receipts. Finally, the court denied the motion under the inevitable discovery doctrine. It explained that even if the search was improper, the information possessed by the

police at that point would have, in concert with their investigative techniques, resulted in the discovery of the remaining methamphetamine.

The court also denied the speedy trial motions, determining that fewer than 40 excludable days had elapsed since Homedew's arraignment. It also noted that Homedew had not provided any authority in support of his proposition that an objection to the continuance should have prevented an otherwise justifiable resetting of the trial date. A jury subsequently found Homedew guilty of the charged crime. He was sentenced to 360 months' imprisonment.

Whereas Homedew was held in custody pending resolution of his case, Carr was granted pretrial release. Carr violated the conditions of that release by absconding for over two months. After being arrested in Florida and returned to Iowa, Carr pleaded guilty pursuant to a plea agreement to the possession count; the conspiracy count against him was dismissed.

Carr's presentence investigation report (PSR) charged him with responsibility for 17.55 kilograms of actual methamphetamine. Due to Carr's abscondment, the PSR called for an obstruction-of-justice enhancement and denial of credit for acceptance of responsibility. *See* U.S.S.G. § 3C1.1 (obstruction of justice); U.S.S.G. § 3E1.1 (acceptance of responsibility). The PSR set a total offense level of 40 and a criminal history category of II. By normal calculation, Carr's Guidelines range would have been 324 to 405 months. Here, however, his Guidelines range was capped by the statutory maximum of 240 months. *See* 21 U.S.C. § 841(b)(1)(C); U.S.S.G. § 5G1.1(c)(1).

Carr requested a downward variance to 120 months. He argued that his extensive criminal history overstated his actual criminality. He attributed most of his criminal behavior to an addiction to drugs. Furthermore, he asserted that his role in the offense was relatively minor and was similar to that of codefendants Shipp and

Tucker, who respectively received sentences of 84 and 90 months. Additionally, he stated that his assistance to law enforcement was valuable to the government. Finally, he claimed he left the jurisdiction primarily to see his father for the first time in 30 years, not to avoid prosecution.

The government conceded that Carr had been helpful at the outset of the case but intimated that it likely would have been able to make its case even without his help. It also emphasized the depth of Carr's involvement in the crime, noting that Carr played a major role in moving a large quantity of illegal drugs across the country. The government also underscored the seriousness of Carr's two-month flight from the jurisdiction. It nonetheless requested that Carr receive the full three-level reduction for acceptance of responsibility and advocated for a sentence on the low end of the Guidelines range.

The court granted Carr the full acceptance of responsibility reduction, resulting in a Guidelines range of 235 to 240 months. In pronouncing sentence, the court set forth a number of factors affecting its decision. It mentioned the "staggering amount of very pure methamphetamine"; the "extent to which [Carr's role was] addiction-driven and the extent to which it exceeds addiction-driven behavior"; the need for just punishment; and Carr's criminal history, including a previous felony drug conviction. Transcript of Sentencing Hearing at 10–11, *United States v. Carr*, No. 4:16-cr-00145-JAJ-HCA-2 (S.D. Iowa June 21, 2017), ECF No. 238. The court also noted the "extent to which the obstruction of justice enhancement perhaps overstates the culpability or the seriousness of that behavior in this case." *Id.* at 11. The court rejected Carr's disparity argument, concluding, "I don't find [Shipp and Tucker] to be similarly situated in terms of the drug quantity associated with them, and their role in the offense was not as aggravated." *Id.* The court imposed a below-Guidelines range sentence of 190 months' imprisonment.

II. *Discussion*

On appeal, Homedew argues that the district court erred in denying his motion to suppress. He also raises an argument regarding ineffective assistance of counsel with regard to his assertion of his speedy trial rights. Carr challenges his sentence as substantively unreasonable. We review each appeal in turn.

A. *Homedew*

1. *Motion to Suppress*

"We review the denial of a motion to suppress de novo but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." *United States v. Hayden*, 759 F.3d 842, 846 (8th Cir. 2014) (citation omitted). "We affirm . . . unless the district court's decision is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." *United States v. Corrales-Portillo*, 779 F.3d 823, 829 (8th Cir. 2015) (ellipsis in original) (quoting *United States v. Wallace*, 713 F.3d 422, 426 (8th Cir. 2013)).

"A consensual search does not violate the Fourth Amendment if the consent was given voluntarily and without coercion." *United States v. Meza-Gonzalez*, 394 F.3d 587, 592 (8th Cir. 2005) (citing *United States v. Martinez*, 168 F.3d 1043, 1046 (8th Cir. 1999)). The government must prove voluntary consent by a preponderance of the evidence. *Id.* (citations omitted). Whether a defendant consented to a search is a factual matter reviewed for clear error. *Id.* at 591 (citation omitted).

At the suppression hearing, Carter testified that he asked Homedew, "Do you mind if I look through your backpack?" and that Homedew replied, "Go ahead." Transcript of Suppression Hearing at 51, *United States v. Homedew*, No. 4:16-cr-145-JAJ-HCA-1 (S.D. Iowa Nov. 22, 2016), ECF No. 252. Further, an exchange during the custodial interview suggests that Homedew acknowledged having consented to the search that resulted in the seizure of the receipts. The district court stated: "The

interviewing officer reminded the defendant that he had consented to the retrieval of his baggage claim receipt, 'You told us we could look in there to get the . . . ' at which point the defendant cut off the officer stating 'You had the receipt . . . you still kept looking.'" Slip Op. at 4 (ellipses in original). The government's representation that Homedew gave the officer permission to search his bag without a warrant is "coherent and facially plausible" and "not contradicted by extrinsic evidence." *United States v. Mendoza*, 677 F.3d 822, 827 (8th Cir. 2012) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)). Accordingly, we find no error in the district court's decision to accept that version of events.

Homedew insists that if he did give consent, it was not voluntary and more limited than the search actually conducted. He points out that when asked for permission, he was "surrounded by police officers, was the focus of a particular investigation, was hand cuffed and physically controlled by the officers, his back pack was in possession of police, weapons were displayed and there was no uncertainty that compliance was necessary." Homedew's Br. at 35–36.

We determine whether consent is voluntary by examining the totality of the circumstances, including

> (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of [his] *Miranda* rights; and (4) whether the individual was aware, through prior experience, of the protections that the legal system provides for suspected criminals. It is also important to consider the environment in which an individual's consent is obtained, including (1) the length of the detention; (2) whether the police used threats, physical intimidation, or punishment to extract consent; (3) whether the police made promises or misrepresentations; (4) whether the individual was in custody or under arrest when consent was given; (5) whether the consent was given in public or in a secluded location; and (6) whether the individual stood by silently or objected to the search.

*United States v. Quintero*, 648 F.3d 660, 667 (8th Cir. 2011) (quoting *United States v. Golinveaux*, 611 F.3d 956, 959 (8th Cir. 2010)).

It is true that up to ten officers were on the scene and at least two officers were in the immediate vicinity of the police car containing Homedew. Further, Homedew was under arrest and handcuffed. But there is no evidence of any threat, physical intimidation, or punishment. The area was a public airport and not secluded. When an officer asked if he could search Homedew's backpack for the baggage claim receipt, Homedew gave an affirmative response. The record gives us no indication that at the time of his arrest, Homedew was anything other than a sober, middle-aged man with no mental defects. And though he was not read his rights before consenting, he has an extensive criminal record and prior experience with the legal system. Further, the record does not indicate that the length of his detention before he gave his consent was of inordinate length. The district court found that Homedew "was under arrest for only a few moments when he gave his consent." Slip Op. at 6–7. Homedew objected to the search once he thought the officers obtained not only the baggage claim receipt but also the postal receipts. He withdrew his consent, and the search ended.

The district court's finding of voluntary consent was not clearly erroneous. "Because we find the warrantless search valid on the basis of consent, we need not address the alternative theories advanced by the Government to justify the search." *United States v. Lumpkins*, 687 F.3d 1011, 1014 n.3 (8th Cir. 2012). Accordingly, we affirm the denial of the motion to suppress.

### 2. *Speedy Trial*

Homedew contends that if not for his attorney's acquiescence to a continuance requested by a codefendant and filing of a motion to suppress, both against his wishes, he would have been able to obtain a dismissal under the Speedy Trial Act or under the Sixth Amendment's guarantee of a speedy trial.

Homedew's argumentation of this issue is somewhat muddled. He makes a passing reference to a belief that the district court improperly determined that the time during which a detention motion pended was excludable. Homedew's Br. at 29–30 ("It is Homedew's position that the orders in regard to the revocation of the pretrial status of Amber Shipp are also not the kinds of motions or order that affect the trial matters, but merely concern where she would be held pending trial."). However, at its core, this argument is a claim of ineffective assistance of counsel. *See id.* at 28–30 (discussing speedy trial and ineffective assistance/habeas law, framing issue primarily in terms of counsel's deficiencies, and concluding section, "Homedew was deprived of his right to a speedy trial as guaranteed by the Sixth Amendment and the Speedy Trial Act by his attorney.").

Homedew's ineffective assistance of counsel claim is premature in this direct appeal. We have stated:

> While "[g]enerally, ineffective assistance of counsel claims are better left for post-conviction proceedings," this Court may decide an ineffective assistance issue on direct appeal if the ineffectiveness is "readily apparent or [the representation is] obviously deficient," if resolution on direct appeal will "avoid a plain miscarriage of justice," or if "the record has been fully developed."

*United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (alterations in original) (quoting *United States v. Cook*, 356 F.3d 913, 919–20 (8th Cir. 2004)).

The district court held a hearing on Homedew's motion to substitute counsel. Though trial counsel conceded that her client wanted no continuances, she also stated that he had been fervent about the need to file a motion to suppress. Counsel stated that she believed the continuance was necessary to make an adequate suppression argument.

-11-

Additionally, the testimony at the hearing focused on whether the attorney-client relationship had so degraded that a new attorney was necessary. The hearing did not explore the quality of legal representation that had been provided. We consider this record to be inadequate to enable appellate review of whether Homedew's first attorney failed to render effective assistance. *See United States v. Ramirez-Hernandez*, 449 F.3d 824, 827 (8th Cir. 2006) ("A properly developed record for purposes of determining a claim of ineffective assistance of counsel would include cross-examination by [the defendant] of his counsel on the question of what advice counsel gave him."). Furthermore, counsel's ineffectiveness was not "readily apparent," her representation was not "obviously deficient," and no plain miscarriage of justice is before the court. *See Rice*, 449 F.3d at 897.

Because none of the listed exceptions is present, this issue is best addressed in a habeas petition. *See United States v. McAdory*, 501 F.3d 868, 872–73 (8th Cir. 2007) (noting that appellate court ordinarily defers ineffective assistance of counsel claims to 28 U.S.C. § 2255 proceedings).

We therefore reject this claim without prejudice. *See id.*

### 3. *Pro Se Supplemental Brief*

Finally, Homedew has filed a motion for leave to file a pro se supplemental brief and tendered his proposed brief for the court's consideration. "It is Eighth Circuit policy not to address issues raised by a defendant in pro se filings with this Court when he is represented by counsel." *United States v. Benson*, 686 F.3d 498, 504–05 (8th Cir. 2012) (citing *United States v. Halverson*, 973 F.2d 1415, 1417 (8th Cir. 1992) (per curiam)). Notwithstanding this policy, we grant Homedew's motion. After review of Homedew's supplemental materials, we conclude that these additional arguments are without merit and do not raise additional issues warranting discussion.

-12-

## B. *Carr*

Carr argues on appeal that his sentence represents an unwarranted disparity when juxtaposed with the sentences of codefendants Shipp and Tucker and is therefore substantively unreasonable. *See* 18 U.S.C. § 3553(a)(6). We review this contention under "a deferential abuse-of-discretion standard" and hold that it is without merit. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (citations omitted).

Shipp received a sentence of 84 months' imprisonment and Tucker received a sentence of 90 months' imprisonment. Carr's Guidelines range was 235 to 240 months, yet he received a sentence of only 190 months. "When a district court varies downward from a presumptively reasonable guideline sentence, 'it is nearly inconceivable that the court abused its discretion in not varying downward still further.'" *United States v. Zauner*, 688 F.3d 426, 429 (8th Cir. 2012) (quoting *United States v. Lazarski*, 560 F.3d 731, 733 (8th Cir. 2009)).

Regarding sentencing disparity, our jurisprudence leaves some question as to whether this factor is aimed at "*national* disparities . . . [or] differences among co-conspirators." *United States v. Fry*, 792 F.3d 884, 892 (8th Cir. 2015) (citations omitted). However, there is no doubt that a sentencing disparity argument requires a showing that the appellant and his comparators are similar in "conduct and record." *United States v. Maxwell*, 778 F.3d 719, 736 (8th Cir. 2015). Here, Carr's PSR held him responsible for a higher drug quantity than both Shipp and Tucker: 17.55 kilograms versus 5.67 kilograms for Shipp and 12.5 kilograms for Tucker. Furthermore, Tucker and Shipp were the beneficiaries of motions for downward departure due to substantial assistance. *See* U.S.S.G. § 5K1.1. No such motion was filed on Carr's behalf. That fact, as well as Carr's greater drug quantity, distinguish him from Shipp and Tucker. The district court did not abuse its discretion.

## III. *Conclusion*

We grant Homedew's motion to file a pro se supplemental brief and affirm the district court's denial of his motion to suppress. We affirm the judgment in Carr's case. We reject, without prejudice, Homedew's ineffective assistance of counsel claim.

_____