# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3163

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff – Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Jackie Manes, | * | |
| | * | |
| Defendant – Appellant. | * | |

| | | |
|---|---|---|
| _____ | | Appeals from the United States |
| | | District Court for the |
| No. 09-3312 | | Eastern District of Arkansas. |
| _____ | | |

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff – Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Stanton Yancey, | * | |
| | * | |
| Defendant – Appellant. | * | |

_____

Submitted: April 16, 2010
Filed: May 10, 2010

_____

Before WOLLMAN, MURPHY, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

In these consolidated appeals Jackie Manes and Stanton Yancey challenge their convictions by a jury for conspiring to distribute and to possess with an intent to distribute at least 50 but less than 500 grams of a substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. Manes contends that evidence obtained during an allegedly illegal stop should have been suppressed, that the jury should have been instructed on the difference between a conspiracy to distribute and a simple drug transaction, and that the evidence was insufficient to sustain his conviction. Yancey appeals the admission at trial of a photograph showing drugs and money that were seized from different locations. We affirm.

I.

On March 1, 2008 officers of the 20th Judicial Drug Task Force (JDTF) in Jonesboro, Arkansas were tipped off to a drug transaction scheduled to take place the following morning. The tip came from a confidential informant who had provided the investigating officers with reliable intelligence within the previous 6 months. The tipster indicated that a sale of 3 ounces of methamphetamine would occur at around 10 a.m. on state highway 74 in Searcy County, Arkansas. The seller would be a Hispanic male traveling from the direction of Batesville, Arkansas in a green Ford Explorer. The buyers, two white males, would arrive in a red or maroon truck.

The next morning officers from the JDTF and the Arkansas State Police set up surveillance along highway 74 near the intersection with state highway 66. Around 9:40 a.m. Agent Johnny Sowell observed a green Ford Explorer traveling on highway 66. In the vehicle were two individuals, one of whom appeared to be an Hispanic

male. A check of the license plates revealed that the Explorer was registered in Cave City which is near Batesville. As the Explorer turned onto highway 74, Agent Sowell proceeded to follow in his unmarked vehicle. Special Agent Kevin Brown followed behind. Agent Brian Tatum, who was posted westward down highway 74, pulled his vehicle onto the highway in front of the Explorer.

As Agent Sowell followed, he observed the Explorer exceed the posted speed limit and cross the center line a number of times. At approximately 10 a.m., a maroon truck approached, traveling eastward on highway 74. The Explorer's Hispanic male passenger then leaned forward and waved. The truck's passengers, two white males, responded with a wave and turned to watch the Explorer pass. The vehicles continued on their course, the truck driving eastward and the Explorer westbound.

Near the end of a curve approximately 1 mile down the highway, the officers made a traffic stop of the Explorer. Officer Sowell approached the car and questioned the driver, Laura Ciesneros (a/k/a Celica Aguilera), while Officer Tatum approached the passenger, Moises Tellez Garcia. At this time the maroon truck reappeared from around the curve and approached the area of the stop. Agent Sowell stepped into the road and signaled for it to pull over. The truck's engine revved momentarily, but then the truck pulled over on the opposite side of the highway.

While Special Agent Brown approached the truck and began to question its passengers, Agent Sowell returned to the Explorer. Tellez Garcia did not speak English well, but Ciesneros agreed to translate. After getting Tellez Garcia's consent to search, Agent Sowell noticed a plastic bag protruding from his front jacket pocket. There were three bags inside containing approximately 3 ounces of methamphetamine. Tellez Garcia, speaking through Ciesneros, stated that he had intended to meet the passengers of the maroon truck in order to sell the methamphetamine to them.

In the meantime the truck's passengers identified themselves to Special Agent Brown as Jackie Manes and Stanton Yancey. They both maintained that they were on

their way to purchase a hay baler. Manes volunteered that he had turned the truck around because he believed he had seen his niece. Agent Sowell then informed Special Agent Brown that Tellez Garcia had identified Manes and Yancey as the intended buyers of his methamphetamine. Both nevertheless denied knowing Tellez Garcia.

After waiving their Miranda rights, Manes and Yancey admitted to having used methamphetamine recently. A search incident to their arrest revealed that each had approximately $1950 cash in his pocket, separated from his other money. The officers discovered a small sheet of paper in Manes' wallet on which numbers and names had been written, apparently recording drug transactions. After a drug dog alerted on the truck, the officers found three glass smoking pipes in the back of the driver's seat.

Manes, Yancey, Ciesneros, and Tellez Garcia were subsequently indicted on charges of conspiring to distribute and to possess with an intent to distribute at least 50 but less than 500 grams of a substance containing methamphetamine. Tellez Garcia pled guilty, while Ciesneros appears to be a fugitive. Manes and Yancey proceeded to trial.

Manes filed a pretrial motion to suppress the evidence obtained as a result of the stop. The district court[1] denied the motion after ruling that the stop, arrest, questioning, and search had not violated the Fourth Amendment. The conspiracy charges against Manes and Yancey proceeded to a jury trial beginning on May 18, 2009. During trial the district court overruled their joint objection to the admission of a photograph showing the drugs and money seized from the two vehicles. The court later refused their proffered instruction seeking to distinguish a simple buyer/seller transaction from a conspiracy to distribute. The court denied their motions for judgment of acquittal. After they were each found guilty, they were sentenced to 60 months imprisonment. Thereafter they filed these appeals.

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

## II.

### A.

Manes appeals the denial of his motion to suppress the statements he made to law enforcement officers, as well as evidence found in his truck and on his person. That evidence included three glass pipes, approximately $1950 in cash, and a sheet of paper with what appeared to be drug notes. He contends that the evidence had been obtained in violation of the Fourth Amendment as the result of a stop not supported by a reasonable suspicion of criminal activity.

On appeal from the denial of a motion to suppress, we review the district court's factual rulings for clear error and its conclusions of law de novo. United States v. Pruneda, 518 F.3d 597, 603 (8th Cir. 2008). "We must affirm . . . unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." United States v. Rodriguez-Hernandez, 353 F.3d 632, 635 (8th Cir. 2003).

The Fourth Amendment is not violated when a law enforcement officer briefly detains an individual to investigate circumstances which gave rise to a reasonable suspicion that criminal activity was underway. Terry v. Ohio, 392 U.S. 1 (1968); United States v. Stevens, 350 F.3d 778, 779 (8th Cir. 2003). A reasonable suspicion arises when specific and articulable facts and rational inferences therefrom would lead "a [person] of reasonable caution" to believe that an investigatory stop would be appropriate because, for example, the suspect may be in the process of committing a crime. Terry, 392 U.S. at 22 (quoting Carroll v. United States, 267 U.S. 132 (1925)). We review the totality of the underlying circumstances to determine whether an investigatory stop was predicated on the required level of suspicion. United States v. Beck, 140 F.3d 1129, 1136 (8th Cir. 1998).

A confidential informant's tip may support a reasonable suspicion if it has sufficient indicia of reliability, United States v. Hill, 91 F.3d 1064, 1069 (8th Cir. 1996), such as the informant's track record as a reliable source or independent corroboration of the tip, see United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993). As the Supreme Court has made clear, "[when] an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." Alabama v. White, 496 U.S. 325, 331 (1990) (citing Illinois v. Gates, 462 U.S. 213, 244 (1983)). The reasonableness of such an inference is bolstered if the tip is corroborated not only by matching an identity or description, but also by accurately describing a suspect's future behavior. Id. at 332; Hill, 91 F.3d at 1069.

All of these factors were present here. A confidential informant who had provided reliable information in the past indicated that at approximately 10 a.m. on March 2, 2008 an Hispanic male suspect would be traveling in a green Ford Explorer on Highway 74 in Searcy County from the direction of Batesville to deliver 3 ounces of methamphetamine to two white males in a red or maroon truck. The investigating officers corroborated the tip when they observed vehicles and passengers matching the informant's description make contact with one another at the predicted time and location.

The officers confirmed that the green Ford Explorer had license plates registered in Cave City, near Batesville, and that its passenger was a Hispanic male. As the officers followed the Explorer, they saw it pass one of the only other vehicles in the vicinity at the time, a maroon truck traveling in the opposite direction with two white male occupants. The officers observed that as the vehicles passed, the occupants waved to each other in a conspicuous fashion. The Hispanic male used big, sweeping motions as he leaned toward the windshield, and the occupants of the maroon truck waved back. Immediately after passing the Explorer, the maroon truck's occupants both looked back toward it as it began to slow down. Soon thereafter, the maroon truck turned around and returned to the scene.

Based on the informant's track record and corroboration of significant aspects of the tip, the officers reasonably inferred that the two white males traveling in the maroon truck—Manes and Yancey—were attempting to engage in an illicit drug transaction. See White, 496 U.S. at 331–32; Hill, 91 F.3d at 1069. Accordingly, the district court appropriately denied Manes' motion to suppress.

B.

Manes next contends that the district court erred in denying his motion for a judgment of acquittal because there was insufficient evidence to sustain a conspiracy conviction. We review de novo the sufficiency of the evidence underlying a conviction, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the verdict. United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003). Reversal is warranted only if no reasonable jury could have found all of the elements of the offense proven beyond a reasonable doubt. Id.

A conspiracy conviction requires proof of three elements: (1) the existence of a conspiracy with an illegal purpose, (2) the defendant's awareness of the conspiracy, and (3) the defendant's knowing entry into it. United States v. Fitz, 317 F.3d 878, 881 (8th Cir. 2003). The evidence must support a finding that Manes knowingly entered into an agreement with at least one other person, the purpose of which was to purchase and distribute methamphetamine. See United States v. Robinson, 217 F.3d 560, 564 (8th Cir. 2000). That evidence may be direct or circumstantial, for "[t]he nature of the offense of conspiracy with its necessary aspect of secrecy often requires that the agreement be implied from the surrounding circumstances." United States v. Gooden, 892 F.2d 725, 729 (8th Cir. 1989).

Sufficient evidence was adduced at trial for the jury reasonably to find beyond a reasonable doubt that Manes had knowingly agreed with Yancey and Tellez Garcia to purchase and distribute methamphetamine. Tellez Garcia testified that he had previously sold Manes and Yancey 2 ounces of methamphetamine and that he had

agreed with them to meet on March 2, 2008 for the purpose of selling them 3 additional ounces. That Manes had agreed to that meeting and purchase was corroborated by evidence that on March 2, 2008 he had proceeded exactly as the informant had predicted, and that once at the meeting point he had waved to Tellez Garcia and turned his truck around to approach him. Further corroboration was furnished by the approximately $3900 in cash found on Manes and Yancey. Given the testimony from Tellez Garcia that 1 ounce of methamphetamine cost approximately $1200, the jury could reasonably infer that the cash was intended for the purchase of 3 ounces.

The evidence also supported the conclusion that Manes and Yancey had agreed to purchase the methamphetamine for the purpose of distributing it. Special Agent Brown testified that the sheet of notes found in Manes wallet was similar to drug notes that he had seen used to record transactions in other distribution cases. See United States v. Kuenstler, 325 F.3d 1015, 1024 (8th Cir. 2003) (documentation appearing to be coded records of drug transactions evidences defendant's intent to distribute). The drug note and the evidence of the interaction between the conspirators was also consistent with typical drug trafficking practice previously observed previously by the government's expert witness, Special Agent Penagos. See United States v. Ramirez, 362 F.3d 521, 524–25 (8th Cir. 2004) (consistency with drug trafficking practice evidences defendant's intent to distribute).

Since both Manes and Yancey were carrying approximately $1950 when they were stopped, the jury could reasonably infer that they had agreed to split the 3 ounces that they intended to purchase. See United States v. Whirlwind Soldier, 499 F.3d 862, 869 (8th Cir. 2007) (combining funds to purchase methamphetamine evidences an agreement to distribute). The quantity of methamphetamine involved independently supports the conclusion that they intended to distribute it. See United States v. Schubel, 912 F.2d 952, 956 (8th Cir. 1990). Special Agent Penagos testified that methamphetamine intended for distribution is purchased in amounts as small as 1/8 of one ounce (approximately 3.5 grams), while smaller amounts indicate possession

purely for personal use. The amount that Manes and Yancey had agreed to purchase (3 ounces, or approximately 82 grams) and the amount that they had purchased in the past (2 ounces, or approximately 56 grams) both independently fell within the range of distribution amounts. Cf. id. (possession of 90 grams of methamphetamine supported finding of intent to distribute).

Because the jury could reasonably find that Manes had knowingly conspired to distribute and possess with intent to distribute methamphetamine, the district court did not err in denying his motion for a judgment of acquittal.

C.

Manes final contention is that the district court abused its discretion by refusing to instruct the jury on the distinction between a conspiracy to distribute and a simple buyer/seller transaction. We review for an abuse of discretion, Boesing v. Spiess, 540 F.3d 886, 891 (8th Cir. 2008), according the district court broad discretion in selecting the form and substance of instruction, Mems v. City of St. Paul, 327 F.3d 771, 781 (8th Cir. 2003). Our inquiry is limited to determining "whether the instructions, when taken as a whole and in light of the particular issues presented, fairly and adequately presented the evidence and the applicable law to a jury." Id. Even the failure to properly instruct will not warrant reversal, however, unless it affected a party's substantial rights, such that it "misled the jury or had a probable effect on the verdict." Slidell, Inc. v. Millennium Inorganic Chemicals, Inc., 460 F.3d 1047, 1054 (8th Cir. 2006).

Manes requested that the jury be instructed as follows:

You are instructed that transient sales where the buyer is purchasing drugs for his own personal use and not for the purpose of distributing or delivering the purchased drugs to others does not in and of itself make the buyer a co-conspirator with the seller in the seller's drug distribution conspiracy.

-9-

The requested instruction's fidelity to the law is not in dispute.   We approved the use of the same language in <u>United States v. Cabbell</u>, 35 F.3d 1255, 1259 (8th Cir. 1994).

The theory of defense upon which Manes relied was that he was an innocent bystander who had inadvertently found himself in the wrong place at the wrong time. He maintained that he had never intended to meet with Tellez Garcia, that he had mistaken him for someone else when they waved to each other on the road, and that the $1950 found in his pocket was intended for the purchase of a hay baler rather than methamphetamine.  Manes did not attempt to prove that he had intended to meet with Tellez Garcia to purchase drugs for his personal use.

The instruction requested by Manes did not correspond with the theory of defense he sought to prove at trial.  The failure to instruct the jury on a theory which was never presented to it could not have affected Manes' substantial rights.  We also question whether the evidence would have supported a buyer/seller instruction given the quantities of methamphetamine (approximately 82 grams) and money ($3900) involved, <u>see</u> <u>United States v. Hamell</u>, 931 F.2d 466, 470 (8th Cir. 1991) (buyer/seller instruction unwarranted where transaction involved distribution quantity), and given Garcia's testimony that he had sold to Manes and Yancey on previous occasions, <u>see</u> <u>United States v. Montano–Gudino</u>, 309 F.3d 501, 505–06 (8th Cir. 2002) (observing that the buyer/seller instruction is appropriate "when there is evidence that only a single, isolated sale of drugs occurred").

Citation to our decision in <u>United States v. Prieskorn</u>, 658 F.2d 631 (8th Cir. 1981) is also unavailing for Manes.  The defendant's theory in that case was that he had purchased drugs only for personal use (not in furtherance of a conspiracy to distribute), <u>id.</u> at 636, but that was not Manes' theory of defense.  Manes' theory was fairly and adequately conveyed by the court's "mere presence" instruction.  <u>Cf.</u> <u>Montano–Gudino</u>, 309 F.3d at 505–06.

Accordingly, the district court did not abuse its discretion in refusing the requested instruction.

## III.

Yancey raises one issue on his appeal. He charges that the district court abused its discretion by admitting into evidence over his objection a photograph displaying both the cash and the drugs seized at the scene. Three bags of drugs, containing approximately 82 grams of a methamphetamine mixture, were found in the coat pocket of Garcia, who had been riding in the Explorer. Thirty nine hundred dollars in cash was found in the pockets of Yancey and Manes, who were stopped while traveling in the maroon truck. The challenged photograph showed the drugs and money lying adjacent to each other. Yancey contends that the photograph sent the subliminal and unfairly prejudicial message that the drugs had been exchanged for the money.

We will recognize an erroneous evidentiary ruling only if it constitutes a clear abuse of discretion. United States v. McPike, 512 F.3d 1052, 1055 (8th Cir. 2008). Reversal is nevertheless unwarranted if the government shows that the error was harmless such that the defendant's substantial rights were unaffected and the error had at most a slight influence on the verdict rendered. Id.

We conclude that the exhibit was unlikely to have affected the verdict. Through extensive cross examination, Yancey's counsel made the jury aware that the photograph did not reflect the location of the drugs and money at the time of the stop. Counsel also was able to argue during closing that "[t]his [the photograph] is a subliminal message to you" intended by the prosecution. Moreover, the court instructed the jury that "I want to make sure [you] understand[] that the photograph was made after the evidence was collected, [and that it was] placed on a table in that way. It was not found in that condition." We conclude that Yancey's substantial rights were not affected by admission of the challenged photograph.

-11-

## IV.

Accordingly, the judgments of the district court are affirmed.

_____