# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1779

_____

United States of America

*Plaintiff - Appellee*

v.

Willie Frank Stokes

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: December 17, 2013
Filed: April 29, 2014

_____

Before BYE, BRIGHT, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Willie Stokes pleaded guilty to one count of possession with intent to distribute at least 28 grams of a mixture and substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Because Stokes had two prior felony convictions, he was designated a "career offender" under U.S.S.G. § 4B1.1. Consequently, the district court calculated an advisory Guidelines sentencing range

of 188–235 months' imprisonment. Finding that the Guidelines overstated Stokes' criminal history, the court reduced his criminal history level, resulting in a new Guidelines range of 168–210 months. The court sentenced Stokes to 168 months—at the bottom of the revised range. On appeal, Stokes challenges the designation of one of his prior felonies as a predicate offense for career-offender status. He also contends that his 168-month sentence is substantively unreasonable and the result of procedural error. For the reasons stated below, we affirm in part, reverse in part, and remand for resentencing.

## I. *Background*

On May 15, 2012, Willie Stokes was indicted on two counts of distributing a mixture and substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The indictment also included an additional count for possession with intent to distribute at least 28 grams of a mixture and substance containing cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). On November 16, 2012, Stokes pleaded guilty to the possession-with-intent-to-distribute charge. In exchange, the government dropped both of the distribution charges, agreed to withhold notice under 21 U.S.C. § 851 of Stokes' prior felony drug conviction, and agreed not to pursue further charges. The parties did not agree on a sentence to be imposed, and both parties acknowledged that Stokes "may be a career offender."

Since 2002, Stokes has had multiple criminal convictions, including four misdemeanor marijuana-possession offenses. Two of his convictions are particularly relevant to his sentence and this appeal. First, in 2006, Stokes was convicted of delivering less than 50 grams of cocaine, a felony, in violation of Michigan Code § 333.7401(2)(a)(iv). Second, in 2009, Stokes was convicted of third-degree fleeing and eluding police, a felony, in violation of Michigan Code § 257.602a(3)(a).[1]

---

[1]This offense is a fourth-degree felony. Mich. Code § 257.602a(1). It becomes a third degree felony in the presence of one of an enumerated list of aggravating

The district court declared Stokes to be a career offender under § 4B1.1(a) of the Sentencing Guidelines. The court determined that both the 2006 cocaine-distribution conviction and the 2009 eluding conviction represent predicate offenses for career offender status.

As a career offender, Stokes' Guidelines criminal history category is VI. *See* U.S.S.G. § 4B1.1(b). The district court calculated an offense level of 31, resulting in a Guidelines sentencing range of 188–235 months' imprisonment. Stokes moved for a downward departure, contending that category VI overstated his criminal history. The district court agreed and departed down to category V. This resulted in a new sentencing range of 168–210 months.

Stokes requested a downward variance from the Guidelines range. During the sentencing hearing, the government suggested that Stokes has "been involved in the drug game for probably the last ten years," and that his spotty employment history is "based probably largely on his involvement in drug distributing." The district court expressed concern about Stokes' drug history and lack of employment, eventually stating "[t]he fact that you're not working for the last ten years tells me you were making your money selling drugs, probably, because otherwise you wouldn't have survived the last ten years." The district court denied Stokes' request for a variance and sentenced him to 168 months' imprisonment—the bottom of the Guidelines range.

---

factors. *Id*. § 257.602a(3)(a)-(c). There is some dispute as to whether Stokes was convicted under § 257.602a(3)(a) (eluding resulting in a collision or accident) or § 257.602a(3)(b) (eluding in an area where the speed limit is 35mph or less). The charging document cites § 257.602a(3)(a), but it provides the accompanying text for § 257.602a(3)(b). Because we hold that the offense of eluding is a crime of violence, we need not address this factual dispute.

## II. *Discussion*

Stokes raises two arguments on appeal. First, he argues that the district court erroneously found that third-degree eluding under Michigan law is a "crime of violence," and therefore erroneously applied U.S.S.G. § 4B1.1. Second, he contends that the district court procedurally erred by basing his sentence, in part, on conjecture that he has been selling drugs for ten years.

## A. *Career Offender designation*

"The court of appeals reviews de novo a district court's determination that a conviction constitutes a crime of violence under the career offender sentencing guideline." *United States v. Williams*, 690 F.3d 1056, 1067 (8th Cir. 2012) (citing *United States v. Craig*, 630 F.3d 717, 723 (8th Cir. 2011)).

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a).

Stokes does not dispute that the first and second elements are met or that his 2006 cocaine-distribution conviction is a predicate offense. The sole issue with respect to Stokes' career-offender status is whether his third-degree eluding conviction is a crime of violence and thus constitutes a predicate offense.

In *United States v. Bartel*, we held that eluding the police under Minnesota law is a crime of violence. 698 F.3d 658 (8th Cir. 2012). No meaningful difference exists between the Minnesota statute that we addressed in *Bartel* and the Michigan statute

that we address here.[2] We concluded in *Bartel* that vehicular flight from the police "presents a serious potential risk of physical injury to another, and is therefore a violent felony under the ACCA." *Id*. at 662 (quotations omitted). "We have never recognized a distinction between" "crime of violence" in the Sentencing Guidelines and "violent felony" in the ACCA. *United States v. Williams*, 537 F.3d 969, 971 (8th Cir. 2008) (citation omitted). Applying *Bartel*, we hold that vehicular flight, as described by Michigan Code § 257.602a(1), is a crime of violence, and is therefore a predicate offense for career-offender status under the Sentencing Guidelines.

---

[2]Minnesota Statute § 609.487, subdivision 3 states, in relevant part, "Whoever by means of a motor vehicle flees or attempts to flee a peace officer who is acting in the lawful discharge of an official duty, and the perpetrator knows or should reasonably know the same to be a peace officer, is guilty of a felony. . . " Subdivision 1 defines "flee" as "to increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a motor vehicle."

Michigan Statute § 750.479a(1) provides:

An operator of a motor vehicle or vessel who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the operator to bring his or her motor vehicle or vessel to a stop shall not willfully fail to obey that direction by increasing the speed of the vehicle or vessel, extinguishing the lights of the vehicle or vessel, or otherwise attempting to flee or elude the police or conservation officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle or vessel is identified as an official police or department of natural resources vehicle or vessel.

B. *Sentencing Error*

Stokes contends that even if he is a career offender under the Guidelines, his 168–month sentence was the result of procedural error, and he therefore must be resentenced. We agree.

> When we review the imposition of sentences, whether inside or outside the Guidelines range, we apply a deferential abuse-of-discretion standard. We must first ensure that the district court committed no significant procedural error. Procedural error includes failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, *selecting a sentence based on clearly erroneous facts*, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range.

*United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (emphasis added) (quotations and citations omitted).

Stokes concedes that he did not object to any alleged procedural errors during sentencing.

> Because [Stokes] did not make a timely objection on these specific claims at sentencing, we review only for plain error. *United States v. Miller*, 557 F.3d 910, 916 (8th Cir. 2009). "To establish plain error, [a defendant] must prove (1) there was error, (2) the error was plain, and (3) the error affected his substantial rights." *Id.* (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)). "An error affects a substantial right if the error was prejudicial," but an error is prejudicial in the sentencing context "only if there is a reasonable probability that the defendant would have received a lighter sentence but for the error." *Id.*

*United States v. Grimes*, 702 F.3d 460, 470 (8th Cir. 2012) (second alternation in original).

Stokes focuses on the following statement from the court during the sentencing hearing: "The fact that you're not working for the past ten years tells me you were making your money selling drugs, probably, because otherwise you wouldn't have survived the last ten years." Stokes argues that this conclusion lacked factual support in the record. According to Stokes, rather than use record evidence, the court misused a statement government counsel made; at best, the conclusion rests on speculation from the contents of the Presentence Report (PSR). Stokes' characterization is borne out by the PSR and the transcript of the sentencing hearing.

Stokes has five prior drug-related convictions. Four were for simple possession of marijuana, and one, in 2006, was for delivery of cocaine. The PSR does not record or suggest a history of selling drugs beyond the 2006 conviction. The record shows that Stokes had been unemployed for all but eight months of the previous ten years. During the preparation of the PSR, Stokes claimed that he had been supported by family members and a gambling habit over the previous ten years. The PSR notes that Stokes' "basic needs were always provided" while his parents were raising him.

During the sentencing hearing, the government stated that "it's the Government's position that [Stokes] didn't have a solid—a solid employment history up until this point, based probably largely on his involvement in drug distributing." The district court noted Stokes' nearly non-existent employment history and his prior drug convictions and concluded that Stokes was "selling drugs, probably" over the prior decade.

The district court "may accept any undisputed portion of the [PSR] as a finding of fact." *United States v. Lee*, 570 F.3d 979, 982 (8th Cir. 2009) (quoting *United States v. Razo-Guerra*, 534 F.3d 970, 975 (8th Cir. 2008). This is different; the PSR contained no factual allegation that Stokes sold drugs for ten years. Rather, both the court and the government stated opinions that Stokes was "probably" selling drugs over the last decade based almost entirely on his lack of employment. Long-term

-7-

unemployment might be consistent with drug sales, but it certainly does not establish such. On this record, we have a firm conviction that a mistake has been made. Stokes admitted to long-term abuse of marijuana. But drug *abuse* is not enough to infer that the user was also *selling* drugs—certainly not that he was doing so as a sole means of survival. Nor are we willing to agree that one drug delivery conviction six-and-a-half years ago supports the inference of a decade-long drug distribution career.

The district court's conclusion that Stokes had sold drugs for ten years is clearly erroneous because the record facts simply do not support it. Given the paucity of factual support for the conclusion, the error is plain. The assumed decade of drug dealing became a principal basis for denying Stokes' requested downward variance. Thus, the error affected his substantial rights. While not certain, we conclude that there is a "reasonable probability" that Stokes' sentence would have been lower had the court not committed the error, and we therefore reverse.

## III. *Conclusion*

Accordingly, we reverse and remand for reconsideration of Stokes' request for a downward variance. In all other respects the judgment of the district court is affirmed.

BRIGHT, Circuit Judge, concurring.

I concur with the majority's result. Because we are remanding this case for resentencing, I write separately to express my concerns that Willie Stokes' original 168-month sentence may be excessive for his drug crime and criminal past.

This case concerns a 29-year-old man with a criminal history that began when he was 11. But notably, Stokes' criminal convictions do not include violent offenses against persons. Rather, his criminal convictions include drug offenses, driving offenses, and a retail fraud offense. And although Stokes may have committed a

crime of violence according to caselaw, which in this instance did not result in any injuries, that does not make him an inherently violent man. Stokes' presentence report depicts a man with a substance abuse problem who dropped out of school in the ninth grade with a 0.40 GPA. Stokes is a drug abuser who needs treatment—not a lengthy confinement.

Stokes' case illustrates the need for what United States Attorney General Eric H. Holder, Jr. calls a new approach to federal sentencing because, as it stands today, "our system is in too many respects broken." Eric Holder, Attorney General of the United States, United States Department of Justice, Remarks at the Annual Meeting of the American Bar Association's House of Delegates (Aug. 12, 2013), *available at* http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html. As Attorney General Holder explained, widespread incarceration is unsustainable because "[i]t imposes a significant economic burden—totaling $80 billion in 2010 alone—and it comes with human and moral costs that are impossible to calculate." *Id.* In those remarks, Attorney General Holder emphasized that "with an outsized, unnecessarily large prison population, we need to ensure that incarceration is used to punish, deter, and rehabilitate – not merely to warehouse and forget." *Id.* He added: "By reserving the most severe penalties for serious, high-level, or violent drug traffickers, we can better promote public safety, deterrence, and rehabilitation—while making our expenditures smarter and more productive." *Id.*

Stokes' actions do not warrant such a severe penalty as a 14-year (168-month) sentence. The Guidelines may categorize Stokes as a career offender, but that does not make him a high-level or violent drug trafficker deserving of a lengthy incarceration that will do little to rehabilitate him. The government will spend an estimated $400,000 to incarcerate Stokes for 14 years.[3] Sentencing Stokes to a

---

[3]Stokes' presentence report includes estimated costs from the Administrative Office of the United States Courts, dated April 10, 2012, depicting an expected

lengthy prison term does a disservice to taxpayers, the government, and to Stokes himself.

Thus, on remand, the district court should apply the factors set forth in 18 U.S.C. § 3553(a) while considering the Attorney General's views and resentence Stokes accordingly.[4]

_____

_____

annual cost of $28,893.40 to house an inmate at a Bureau of Prisons Facility.

[4]The 18 U.S.C. § 3553(a) factors include:
1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
. . . .
(5) any pertinent policy statement—
. . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.