# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1769

_____

United States of America

*Plaintiff - Appellee*

v.

Ismael Corrales-Portillo

*Defendant - Appellant*

_____

No. 14-1816

_____

United States of America

*Plaintiff - Appellee*

v.

Jose Corrales-Portillo, also known as Abraham Diaz-Rodriguez

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: November 14, 2014
Filed: March 9, 2015

_____

Before RILEY, Chief Judge, BEAM and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

A grand jury indicted brothers Jose Corrales-Portillo (Jose) and Ismael Corrales-Portillo (Ismael) for conspiring to distribute methamphetamine and heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (count one); possessing with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2 (count two); and possessing heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and 18 U.S.C. § 2 (count three). Jose pled guilty to count one, and the district court[1] sentenced him to 175 months imprisonment. Ismael proceeded to trial, and a jury convicted him of all three counts. The district court sentenced Ismael to concurrent sentences of 188 months imprisonment on each count. Jose appeals his sentence, and Ismael appeals his conviction and sentence. With appellate jurisdiction under 28 U.S.C. § 1291, we affirm in each appeal.

## I. BACKGROUND
### A. Facts

On July 3, 2013, a confidential informant—seeking to avoid drug charges of his own—agreed to cooperate with an ongoing narcotics investigation by Officer Anthony Ballantini and Sergeant Kirk Bagby of the Des Moines, Iowa, Police Department (department). The informant, who had not previously cooperated with the department, provided detailed information about his supplier, an older Hispanic man he knew as

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

-2-

Compa (later identified as Jose). To assist with the investigation, the informant, in the presence of the police, made a recorded call and texted Jose to arrange to purchase three pounds of methamphetamine. The informant told officers Jose obtained the drugs from Arizona and would transport them from Grand Island, Nebraska, to Des Moines the following week. This information corroborated what the officers had learned about the informant's drug business earlier in their investigation.

On July 13, 2013, the informant advised the police that Jose was in Grand Island and would deliver the drugs to Des Moines later that day. Contacting the officers throughout the day, the informant forwarded Jose's texts and advised the officers of the time and place he was to meet Jose and where Jose had hidden the drugs on his vehicle. The informant told the officers he expected Jose to be driving a vehicle with Arizona or Nebraska license plates because the informant previously had seen Jose deliver drugs in Grand Island with a blue Ford truck with Nebraska plates.

Before the meeting, Officer Ballantini instructed the informant to depart from the gas station where he was to meet Jose by driving south if he learned the drugs were in Jose's vehicle and to depart by driving north to a local garage if he was unsure where the drugs were. Officer Ballantini devised this signal because he suspected Jose might transport the drugs in a "ghost vehicle" to avoid police detection.[2]

As Jose neared Des Moines, officers began surveilling the informant's residence and the gas station where he was to meet Jose. When the informant left for the meeting with Jose, Officer Ballantini followed him. Sergeant Cynthia Donahue was already at the station. Having parked her unmarked car near the gas station, Sergeant Donahue positioned herself inside the station. Sergeant Ronald Kouski waited nearby in a marked vehicle with a drug dog to make a traffic stop if necessary.

---

[2]The investigating officers and informant testified drug traffickers frequently use more than one car when transporting drugs either as a decoy or as a way to conduct counter-surveillance on the police.

The informant arrived at the gas station and parked his car. Minutes later, Jose, an older Hispanic man, arrived in a blue Ford Ranger truck with Nebraska plates and met with the informant. As they met, Sergeant Donahue observed Ismael pumping gas into a Lexus with Nebraska plates. Ismael was watching the meeting and making eye contact with Jose and the informant. Sergeant Donahue deduced Ismael was providing counter-surveillance for Jose. When Ismael finished pumping gas, he parked his car and headed toward the building. Sergeant Donahue then lost track of Ismael as she left the building and returned to her car to keep an eye on the Lexus.

At the meeting, Jose told the informant the drugs were inside the gas tank of the Ford truck. The informant testified Ismael joined the meeting, and Jose introduced him as his "partner," explaining he was "showing [Ismael] the ropes," "the spots where people can meet up," and "the people" so Ismael could see "what the person looks like" and know "what to do," enabling Ismael to "take over" Jose's drug deliveries. Neither Officer Ballantini nor Sergeant Donahue witnessed Ismael make contact with the informant—both testified they were repositioning at the relevant time. The informant told Jose to follow him to a nearby garage to unload the drugs. Jose returned to his truck and Ismael joined him as a passenger, leaving the Lexus in the parking lot.

With Jose and Ismael following in the Ford truck, the informant drove south out of the gas station. As he drove, the informant called Officer Ballantini to tell him the drugs were in the gas tank of Jose's truck. When Jose abruptly turned into a restaurant parking lot—abandoning the informant—Officer Ballantini directed Sergeant Kouski to stop the truck. Once stopped, Jose and Ismael tried to exit the vehicle before Sergeant Kouski instructed them to stay put. Sergeant Kouski suspected Jose and Ismael were trying to distance themselves from contraband.

Jose and Ismael each presented Arizona identification—Jose's was false and Ismael's was valid. They told Sergeant Kouski they were traveling from Kearney,

Nebraska, to Peoria, Illinois, to find roofing work. Drawing on his own roofing experience, Sergeant Kouski was skeptical of their story based in part on their lack of roofing tools. With Jose's consent, Sergeant Kouski searched the truck and deployed his drug dog. The dog alerted to the presence of contraband, and Sergeant Kouski notified the narcotics officers, who arrived to assist with the search.

After removing the bed of the truck, the officers found hidden in the truck's gas tank three one-pound bags of methamphetamine and eleven one-pound bags of heroin with an estimated street value of more than $2 million.[3] The officers also seized other evidence, including the cell phone Jose used to arrange the deal with the informant, and placed Jose and Ismael under arrest.

The police impounded the Lexus and searched it as well. When his drug dog alerted to the back seat, Sergeant Kouski removed the seat and located a secret compartment in the gas tank. Although the compartment was empty, Sergeant Kouski testified his dog alerted to the odor of narcotics.

## B.    Procedural History

On August 27, 2013, the government secured a three-count indictment charging Jose and Ismael with conspiring to distribute controlled substances and possessing with intent to distribute both methamphetamine and heroin. Before trial, Jose and Ismael moved to suppress the evidence seized from the truck, arguing the police lacked reasonable suspicion for the traffic stop because they had not independently verified the information from their first-time informant. After a November 8, 2013, suppression hearing, the district court denied the motion, concluding reasonable suspicion supported the stop.

---

[3]The police reassembled Jose's truck and sold it at auction. The buyer's mechanic found another six one-pound packages of heroin in the gas tank.

On November 20, 2013, Jose pled guilty to the conspiracy charge in exchange for the government's dismissal of the other two counts and its agreement to withhold filing a notice of sentence enhancement under 21 U.S.C. § 851. The district court sentenced Jose to 175 months imprisonment, which Jose appeals.

On November 22, 2013, Ismael went to trial. At the close of the government's case, Ismael moved for judgment of acquittal, which the district court denied. Over Ismael's objection, the district court instructed the jury it could convict Ismael if he had been deliberately ignorant of the drug crimes. In closing, Ismael argued "he had no idea what Jose was doing." The jury convicted Ismael on all three counts.

On March 26, 2014, the district court held a sentencing hearing, at which Ismael requested a four-level role reduction under United States Sentencing Guidelines (U.S.S.G. or Guidelines) § 3B1.2(a), asserting he had a minimal role in the drug conspiracy. Denying the request, the district court sentenced Ismael to 188 months in prison—the bottom of his advisory Guidelines range. Ismael appeals his conviction and sentence.

## II.    DISCUSSION
### A.    Ismael's Motion to Suppress[4]

Ismael contends the district court erred in denying his motion to suppress the evidence obtained as a result of the warrantless search of Jose's truck. In Ismael's view, the officers lacked reasonable suspicion for the stop because the informant had no prior track record at the department and the officers failed to corroborate independently the information he provided.

_____

[4]Although Ismael and Jose both raised this issue in the district court, only Ismael challenges the district court's denial of his motion.

"We review the denial of a motion to suppress *de novo* but the underlying factual determinations for clear error, giving due weight to inferences drawn by law enforcement officials." United States v. Clutter, 674 F.3d 980, 982 (8th Cir. 2012). "'We affirm . . . unless the district court's decision is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.'" United States v. Wallace, 713 F.3d 422, 426 (8th Cir. 2013) (quoting United States v. Bay, 662 F.3d 1033, 1035 (8th Cir. 2011)).

"A traffic stop constitutes a 'seizure' within the meaning of the Fourth Amendment, see Delaware v. Prouse, 440 U.S. 648, 653 (1979), and therefore must be reasonable to survive constitutional scrutiny." United States v. Martinez, 358 F.3d 1005, 1009 (8th Cir. 2004). "[T]he Fourth Amendment is satisfied if the [stop] is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of information possessed by police and its degree of reliability.'" Navarette v. California, 572 U.S. ___, ___, 134 S. Ct. 1683, 1687 (2014) (quoting Alabama v. White, 496 U.S. 325, 330 (1990)). In evaluating reasonable suspicion, we "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Arvizu, 534 U.S. at 273 (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)).

"A confidential informant's tip may support a reasonable suspicion if it has sufficient indicia of reliability, such as the informant's track record as a reliable source or independent corroboration of the tip." United States v. Manes, 603 F.3d 451, 456 (8th Cir. 2010) (internal citation omitted); accord United States v. Winarske, 715 F.3d 1063, 1067 (8th Cir. 2013) ("[I]f an informant is otherwise unknown to police and has no proven track record of reliability, police may deem an informant credible and make

a finding of probable cause when an informant's information is at least partly corroborated."). "An informant may also prove himself to be a reliable source for law enforcement by providing predictive information about a meeting time or place." Winarske, 715 F.3d at 1067. The reliability of an informant's information "is bolstered if the tip is corroborated not only by matching an identity or description, but also by accurately describing a suspect's future behavior." Manes, 603 F.3d at 456.

In this case, the totality of the circumstances sufficiently established the informant's reliability and provided reasonable suspicion for the stop. As part of his ongoing investigation, which included electronic monitoring, Officer Ballantini suspected the informant was obtaining drugs from Grand Island for sale in Des Moines. When a search of the informant's home revealed drugs, the informant—trying to provide useful information to save his own skin—quickly agreed to cooperate with the police and help them catch his supplier. Confirming what the police already suspected about his drug activity based on their prior investigation, the informant described his supplier and the blue truck he drove to their first meeting in Grand Island. With officers present, the informant contacted his supplier and arranged for delivery of three pounds of methamphetamine to Des Moines. On the day the drugs arrived, the informant frequently updated the police with details about the meeting, including the time, location, and method of the exchange. The informant even forwarded Jose's texts and instructions directly to the police.

Visually monitoring the informant's meeting at the time and location the informant had said it would take place, the police quickly confirmed the informant's description of both his supplier and the blue truck with Nebraska plates the informant predicted his supplier would drive. As the meeting ended and the exchange was about to take place at a different location, the informant signaled the police according to Officer Ballantini's plan—driving south from the gas station to let Officer Ballantini know the drugs were in the truck. As the informant drove south with Jose behind him, the informant called Officer Ballantini to tell him Jose had hidden the drugs in the gas

tank.  When Sergeant Kouski began following the blue truck, Jose and Ismael reacted suspiciously, see, e.g., Arvizu, 534 U.S. at 275-76, abandoning the informant, turning abruptly into a restaurant parking lot, and trying to distance themselves from the truck.

By the time Sergeant Kouski made the stop, the officers were well aware of the basis for the informant's knowledge and had corroborated the vast majority of what he had told them.  The officers had more than enough reliable information to establish a "'particularized and objective basis' for suspecting legal wrongdoing," Arvizu, 534 U.S. at 273 (quoting Cortez, 449 U.S. at 417), before stopping Jose's truck.  See, e.g., United States v. Brown, 49 F.3d 1346, 1349 (8th Cir. 1995) (affirming probable cause for arrest based on a first-time informant's "accurate and detailed information about" a drug delivery arranged in the officers' presence where the informant's predictions about the time and place of the delivery and his description of his supplier and his vehicle "were corroborated by the independent observations of police officers").  The district court did not err by denying Ismael's motion to suppress.

## B.    Deliberate Ignorance

Ismael next argues the evidence did not support giving a deliberate ignorance instruction.  "We review a district court's decision to include a jury instruction for abuse of discretion."  United States v. Galimah, 758 F.3d 928, 930 (8th Cir. 2014).  "We look to whether there was sufficient evidence to justify the instruction, reviewing 'the evidence and any reasonable inference from that evidence in the light most favorable to the government.'"  United States v. Whitehill, 532 F.3d 746, 751 (8th Cir. 2008) (quoting United States v. Hiland, 909 F.2d 1114, 1131 (8th Cir. 1990)).

"A deliberate ignorance instruction is appropriate when the evidence is sufficient to support a jury's conclusion that 'the defendants had either actual knowledge of the illegal activity or deliberately failed to inquire about it before taking action to support the activity.'"  United States v. Hernandez-Mendoza, 600 F.3d 971, 979 (8th Cir. 2010) (quoting Whitehill, 532 F.3d at 751).  "Ignorance is deliberate if

-9-

[a defendant was] presented with facts putting [him] on notice criminal activity was particularly likely and yet intentionally failed to investigate." Whitehill, 532 F.3d at 751. "While a district court should not give the deliberate-ignorance instruction when the evidence points *solely* to the defendant's actual knowledge of the facts in question, the 'instruction is particularly appropriate when the defendant denies any knowledge of a criminal scheme despite strong evidence to the contrary.'" United States v. Woodard, 315 F.3d 1000, 1004 (8th Cir. 2003) (quoting United States v. Regan, 940 F.2d 1134, 1136 (8th Cir. 1991)).

The evidence in this case justified the instruction. Over the course of the trial, the government presented strong evidence Ismael was aware of the illegal drugs in Jose's truck and was actively working with Jose, his "partner," to deliver them from Arizona to Des Moines by way of Grand Island. In its closing argument, the government emphasized that the testimony of the investigating officers and the informant established Ismael drove a ghost vehicle registered under his brother's false name, conducted counter-surveillance at the gas station, joined the meeting between Jose and the informant, was trying to "learn the ropes" of Jose's drug trade, unquestioningly got into Jose's truck to travel to a different location to help remove the drugs from the gas tank, and gave a common fabricated cover story when stopped by the police.

In his own closing argument, Ismael maintained there was "no evidence" Ismael knew the drugs were hidden in the gas tank and asked the jury to "believe he had no idea what Jose was doing." The district court did not abuse its discretion in giving the deliberate ignorance instruction. See id.

### C.    Ismael's Motion for Judgment of Acquittal

Ismael argues the district court erred in denying his motion for judgment of acquittal on all three counts. See Fed. R. Crim. P. 29(a). According to Ismael, the

evidence was strong that Jose was guilty of the crimes charged, but the evidence "was utterly and totally lacking that [Ismael] too participated in the criminal activity."

"We review *de novo* a district court's denial of a motion for judgment of acquittal, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in its favor." United States v. Vore, 743 F.3d 1175, 1180 (8th Cir. 2014). "We will not lightly overturn the jury's verdict and will reverse only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. No Neck, 472 F.3d 1048, 1052 (8th Cir. 2007).

### 1. Conspiracy

To convict Ismael of conspiracy as charged in count one, "the Government had to prove beyond a reasonable doubt (1) that there was a conspiracy (an agreement to possess with intent to distribute the drugs); (2) that [Ismael] knew of the conspiracy; and (3) that [Ismael] intentionally joined the conspiracy." United States v. Shaw, 751 F.3d 918, 920 (8th Cir. 2014). The government maintains it met its burden with direct and circumstantial evidence of Ismael's active involvement in the conspiracy to distribute drugs with Jose. See, e.g., United States v. Ojeda, 23 F.3d 1473, 1476 (8th Cir. 1994) ("Because a jury rarely has direct evidence of a defendant's knowledge, it is generally established through circumstantial evidence."). The government highlights the informant's testimony that Jose introduced Ismael as his "partner," and explained he was "just showing [Ismael] the ropes" so Ismael could take over delivering drugs to Des Moines.

In response, Ismael asserts the informant "was the only testifying witness that had anything other than a hunch to offer that [Ismael] was involved in anything and his testimony was sketchy at best." In Ismael's view, the informant's testimony "was not supported by any of the testifying officers."

-11-

But Ismael raised that argument at trial, and the jury reasonably rejected it.  See United States v. Listman, 636 F.3d 425, 430 (8th Cir. 2011) (concluding "it was the jury's prerogative to believe" a co-conspirator who testified the defendant knew he was transporting drugs because "'[t]he jury is the final arbiter of the witnesses' credibility, and we will not disturb that assessment'" (quoting United States v. Hayes, 391 F.3d 958, 961 (8th Cir. 2004))).  To the extent there were any "conflicts or contradictions in [the] testimony," the jury is responsible for resolving them, "and we resolve any credibility issues in favor of the verdict."  United States v. Ali, 616 F.3d 745, 755 (8th Cir. 2010).  The government adduced sufficient evidence to permit a reasonable jury to find Ismael intentionally conspired to distribute illegal drugs.

### 2.    Possession with Intent to Distribute

To prove possession of methamphetamine and heroin with intent to distribute as charged in counts two and three, respectively, "the Government had to prove beyond a reasonable doubt that [Ismael] knowingly possessed the methamphetamine [and heroin] in the truck with the intent to distribute it."  Vore, 743 F.3d at 1180; see also 21 U.S.C. § 841(a)(1), (b)(1)(A).  "'Possession can be actual or constructive.  Actual possession is the knowing, direct, and physical control over a thing.'"  United States v. Brown, 634 F.3d 435, 439 (8th Cir. 2011) (quoting United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004)).  "Constructive possession is defined as knowledge of [the] presence of the contraband plus control over the contraband."  United States v. Wright, 739 F.3d 1160, 1168 (8th Cir. 2014).

Ismael contends "evidence that [he] possessed either the methamphetamine or the heroin is equally lacking" given the absence of direct incriminating evidence like finger prints or "statements of ownership."  Relying on United States v. Pace, 922 F.2d 451 (8th Cir.1990), Ismael argues his "proximity to contraband" and his "mere presence at the scene of concealed illegal activity is not enough" to convict.

Ismael's arguments simply run out of gas. In Pace, we concluded the government failed to adduce sufficient evidence that the defendant driver of a vehicle knowingly possessed the illegal drugs concealed in his passenger's bags in the back of the car. See id. at 452-53. At trial, the driver and passenger both testified the driver was unaware of the hidden drugs. See id. Noting there was no evidence the driver opened the passenger's bags or knew of the "criminal nature of the trip," we determined "it [was] merely conjecture to conclude [the driver] knew what those packages contained." Id. at 453.

Unlike Pace, "this is not a case in which the government could not prove, even by inference, that the defendant was anything more than present in the vehicle or physically proximate to the contraband." United States v. Johnson, 18 F.3d 641, 648 (8th Cir. 1994). Ismael again ignores the informant's testimony and the other strong evidence that Ismael knowingly and actively worked with his "partner" Jose to conceal, transport, and deliver the drugs hidden in the truck's gas tank. See United States v. Patterson, 886 F.2d 217, 219 (8th Cir. 1989) (per curiam) ("Constructive possession need not be proved by direct evidence, but rather may be premised upon circumstantial evidence, which we recognize as being 'intrinsically as probative as direct evidence.'" (quoting United States v. Holm, 836 F.2d 1119, 1122 (8th Cir. 1988))).

Ismael unsurprisingly points his finger at his brother Jose, claiming Ismael was just innocently and ignorantly along for the ride. But "[p]ossession may be joint; it need not be exclusive." United States v. Smart, 501 F.3d 862, 865 (8th Cir. 2007). And the evidence supporting Ismael's convictions "need not exclude every reasonable hypothesis of innocence, but simply be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." United States v. McGuire, 45 F.3d 1177, 1186 (8th Cir. 1995); see also United States v. Burks, 934 F.2d 148, 151 (8th Cir. 1991) ("If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction."). Based on the record evidence, a

reasonable jury could find Ismael and Jose jointly possessed the drugs with intent to distribute. The district court did not err in denying Ismael's motion for judgment of acquittal.

### D.     Ismael's Sentence

Ismael finally contends the district court erred in denying his request for a four-level sentence reduction under U.S.S.G. § 3B1.2(a), which provides a four-level reduction in the offense level "[i]f the defendant was a minimal participant in any criminal activity." According to Ismael, he was entitled to a reduction because "his conduct was less culpable than" Jose's and the balance of the evidence, in his view, suggested Ismael "was only along to assist Jose in his operation."

In denying Ismael a sentence reduction, the district court found the "degree of sophistication involved in this offense," the large quantity of drugs recovered, and "the elaborate nature in which the drugs were hidden and protected" indicated "both defendants [Jose and Ismael] were deeply involved" in criminal activity. We detect no clear error in the district court's findings regarding Ismael's substantial role in his crimes and conclude the district court properly denied Ismael's request for a sentence reduction. See United States v. Martinez, 168 F.3d 1043, 1048 (8th Cir. 1999) (standard of review).

### E.     Jose's Sentence

After Jose pled guilty to count one, the district court held a sentencing hearing. Adopting the factual findings in Jose's presentence investigation report without objection from either party, the district court calculated Jose's advisory Guidelines range to be 151 to 188 months imprisonment (level 33, category II).[5] The district court rejected Jose's request for a mandatory minimum sentence of 120 months and

---

[5]Jose's range reflects a two-level reduction based on the parties' stipulation regarding a proposed amendment to the Guidelines.

sentenced Jose to 175 months—near the middle of the range. On the government's motion, the district court dismissed the remaining charges.

On appeal, Jose contends the district court committed multiple procedural errors and imposed an unreasonable sentence driven in part by prejudice. In particular, Jose complains the district court (1) failed to correct the government's alleged misstatement that he "had been involved in a sophisticated drug operation for twenty years"; (2) referred to his "uncounted ancient criminal history"; (3) decided Jose's financial hardships did not justify the harm Jose's activities caused the United States; (4) considered the 240-month mandatory sentence Jose would have faced if the government had filed notice under 21 U.S.C. § 851; and (5) said the court would "look forward to reducing" Jose's sentence if he cooperated with the government and gave a truthful proffer. In Jose's view, it was unreasonable for the district court to consider and discuss these factors.

Jose did not raise any of the alleged procedural errors at sentencing, so we review for plain error. See United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc) ("Errors not properly preserved are reviewed only for plain error under Rule 52(b) of the Federal Rules of Criminal Procedure."). Absent significant procedural error, we review the substantive reasonableness of the sentence imposed for abuse of discretion. See United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

Our review of the sentencing record reveals Jose's arguments are without merit and his confused accusation of prejudice utterly unfounded. Most of Jose's misguided complaints relate to the district court's thorough consideration of the 18 U.S.C. § 3553(a) factors. In essence, Jose argues it was unreasonable for the district court to consider the § 3553(a) sentencing factors and explain his sentence as required by law. The argument obviously fails.

Jose's cursory reliance on United States v. Stokes, 750 F.3d 767, 772 (8th Cir. 2014), also fails. In Stokes, we concluded the sentencing judge plainly erred by (1) assuming the defendant had sold drugs for ten years despite a lack of record support, and (2) using that fact as "a principal basis for denying" a downward variance. Id. Unlike Stokes, there is nothing in the record here to indicate the district court concluded Jose sold drugs for twenty years, much less that any such fact was a principal basis for imposing Jose's within-Guidelines sentence.

Contrary to Jose's unsupported assertion, the district court need not "disavow" purportedly "erroneous statements" made by the government or otherwise separately address every argument made at sentencing. See, e.g., United States v. Black, 670 F.3d 877, 882 (8th Cir. 2012). The district court did not plainly err in calculating Jose's sentence, and Jose abjectly "fails to overcome" the presumption of reasonableness we afford his within-Guidelines sentence. United States v. Wanna, 744 F.3d 584, 589 (8th Cir. 2014).

## III. CONCLUSION

We affirm both Jose's sentence and Ismael's conviction and sentence.

_____